IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KUN SHAN PENG,<br><br>    Petitioner,<br><br>  v.<br><br>JAMES TILTON, Director, G. SWARTHOUT, Warden,<br><br>    Respondents.<br>_____/ | No. C 12-0065 CW (PR)<br><br>ORDER DENYING HABEAS PETITION AND DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, a state prisoner proceeding pro se, has filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the 2010 decision by the California Board of Parole Hearings (Board) to deny him parole. He has paid the filing fee.

BACKGROUND

According to the allegations in the petition, Petitioner plead guilty to second degree murder on August 5, 1992, in Santa Clara County Superior Court. He was sentenced to a term of fifteen years to life in state prison. He did not appeal his conviction or sentence.

On July 28, 2010, the Board found Petitioner unsuitable for parole. Petitioner's state habeas corpus petition challenging the Board's decision was denied by the California Supreme Court on December 14, 2011.

DISCUSSION

A. Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment

of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975). A district court shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

B.  Petitioner's Claims

    1.  Due Process Violation

Petitioner claims that the Board's decision finding him unsuitable for parole violated his federal constitutional right to due process because the decision was based solely on the immutable facts of the commitment offense and not on some evidence demonstrating that he poses a current threat to the public.

A prisoner subject to California's parole statute receives adequate process when he is allowed an opportunity to be heard and is provided with a statement of the reasons why parole was denied. Swarthout v. Cooke, 131 S. Ct. 859, 862 (2011). The transcript of the parole hearing that Petitioner has attached to his petition shows that he received at least this amount of process. The Constitution does not require more. Id.

Further, whether the Board's decision was supported by some evidence of current dangerousness is irrelevant on a petition for a writ of habeas corpus in federal court. The Supreme Court has made clear that "it is no federal concern . . . whether California's 'some evidence' rule of judicial review (a procedure beyond what the Constitution demands) was correctly applied." Id. at 863.

2

Accordingly, Petitioner is not entitled to habeas relief on this claim.

2.   Ex Post Facto Violation

Petitioner claims the denial of parole violated his federal constitutional right to be free from the ex post facto application of punitive laws because he committed his crime in 1988 but was denied parole based on laws enacted in 1988 and 2008.

Proposition 89 was enacted in 1988.  It gave the governor power to review and reverse or modify the Board's parole decisions.  The Ninth Circuit has found, as a matter of law, that Proposition 89 does not raise ex post facto concerns because a prisoner cannot demonstrate with certainty that he would have been granted parole before the change.  See Johnson v. Gomez, 92 F.3d 964, 967-68 (9th Cir. 1996).

Proposition 9 (also known as the "Victims' Bill of Rights Act of 2008: Marsy's Law") was enacted in 2008.  It modified the availability and frequency of parole hearings.  See Cal. Penal Code § 3041.5(b)(3) (2010).  The United States Supreme Court found the law did not raise ex post facto concerns because it had "no effect on the standards for fixing a prisoner's initial date of 'eligibility' for parole" or for "determining his 'suitability' for parole" and setting his release date; rather, the focus of the law was to relieve the parole board from the costly and time-consuming responsibility of scheduling parole hearings for prisoners who have no reasonable chance of being released.  See California Dep't of Corrections v. Morales, 514 U.S. 499, 507 (1995).

3

1    Accordingly, Petitioner is not entitled to habeas relief on
2 this claim.
3    3.   Breach of Plea Agreement
4    Petitioner claims that the Board's denial of parole is a
5 breach of the term of his plea agreement that he would receive a
6 sentence of fifteen years to life in exchange for pleading guilty
7 to second-degree murder.
8    "Plea agreements are contractual in nature and are measured
9 by contract law standards." Brown v. Poole, 337 F.3d 1155, 1159
10 (9th Cir. 2003) (quoting United States v. De la Fuente, 8 F.3d
11 1333, 1337 (9th Cir. 1993)). Although a criminal defendant has a
12 due process right to enforce the terms of a plea agreement, see
13 Santobello v. New York, 404 U.S. 257, 261-62 (1971), Petitioner
14 has alleged no facts indicating that there is a term of the plea
15 agreement that has been breached.
16    Petitioner first contends the plea agreement has been
17 breached because he is being punished as if he had plead guilty to
18 first-degree murder. Specifically, he maintains that the maximum
19 sentence he could have received for second-degree murder is
20 twenty-one years, but by the time he was denied parole in 2010 he
21 had served twenty-four years. This argument fails because
22 Petitioner is receiving parole consideration based on his sentence
23 of fifteen years to life. First-degree murder is punishable by
24 death, life without parole, or a term of twenty-five years to
25 life. Cal. Penal Code § 190(a). Consequently, if Petitioner had
26 been convicted of first-degree murder, he would not have been
27 eligible for parole consideration in 2010.
28    Petitioner also appears to argue that under the plea

4

agreement he should have been released after he reached the minimum term of years on his sentence. This claim fails, however, because he does not allege that the plea agreement included a promise that he would be released on parole after he reached any specific number of years in custody.

Moreover, the claim is belied by the transcript of the change of plea hearing, the abstract of judgment and the sentencing report.[1] Specifically, during the plea colloquy, the trial judge asked Petitioner if he understood that he was pleading guilty to a charge of second-degree murder, "with the understanding that you'll be sentenced to prison for fifteen years to life." Peng v. Tilton, C 07-4797 MMC (PR), Docket no. 13, Ex. 1 at 3:6-11. Petitioner responded that he did. Id. at 3:12. Thereafter, Petitioner's counsel, Mr. Mayfield, stated for the record that he had explained to Petitioner that he was pleading guilty to a sentence of fifteen years to life, he would not be eligible for parole consideration until he had served ten years of his sentence, and he "most likely" would not be granted parole the first time he came before the parole board but "he then would be considered again and his chances would improve." Id. at 10:3-24. Additionally, the following conversation took place between the Mr. Schon (the prosecutor), Petitioner and Mr. Mayfield:

> Mr. Schon: I think it should be pointed out to Mr. Peng, that the parole board looks at how you behave in prison to decide when to parole you. There's a

---

[1] The Court takes judicial notice of these documents, which were filed as exhibits in support of Respondent's motion to dismiss as untimely Petitioner's federal habeas corpus petition challenging his conviction. See Peng v. Tilton, C 07-4797 MMC (PR), Docket no. 13.

5

>    possibility you could serve fifteen years or more than fifteen years all the way up to life if the parole board feels that for some reason you should be kept in prison. That's important for you to realize so it's important for you in prison to be well behaved and to follow their instructions, to make yourself a more suitable candidate for parole, whenever they start considering you for parole, okay Mr. Peng?
>
>    Petitioner:    Oh, yeah.
>
>    Mr. Schon:    Do you understand that, Mr. Peng?
>
>    Petitioner:    Yes.
>
>    Mr. Mayfield: Then Mr. Peng I explained that to you as well didn't I?
>
>    Petitioner:    Yes.

Ex. 1 at 11:27-12:14.

Based on the above, the Court finds no merit to Petitioner's claim that his plea agreement was breached because he was denied parole. Accordingly, he is not entitled to habeas relief on this claim.

    D.   Eighth Amendment Violation

Petitioner contends that by denying him parole the Board has subjected him to cruel and unusual punishment in violation of the Eighth Amendment.

The argument is without merit. The Eighth Amendment forbids only extreme sentences that are "grossly disproportionate to the crime." Ewing v. California, 538 U.S. 11, 23 (2003). Even if the Court assumes, for the sake of argument, that Petitioner will serve the maximum term of life, a life sentence for the crime of murder is not disproportionate to the crime committed. Cf. Ewing v. California, 538 U.S. 11 (2003) (finding Eighth Amendment not violated by sentence of twenty-five years to life for grand theft); Harmelin v. Michigan, 501 U.S. 957 (1991) (finding Eighth

Amendment not violated by life sentence for cocaine possession); Hutto v. Davis, 454 U.S. 370 (1982) (finding Eighth Amendment not violated by forty-year sentence and $20,000 fine for possession and distribution of nine ounces of marijuana).

Accordingly, Petitioner is not entitled to habeas relief on this claim.

CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. The petition for a writ of habeas corpus is DENIED.

2. A Certificate of Appealability (COA) is DENIED.

Petitioner has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), or demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The denial of a COA cannot be appealed; however, Petitioner may seek a COA directly from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure. See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 10/29/2012

CLAUDIA WILKEN
United States District Judge

7